May it please the Court, my name is Beth Creighton. I represent Henrietta Browning, who is also in the courtroom here today. I'd like to reserve three minutes for rebuttal, please. It's important to note at the outset of this case that the evidence here was excluded in a motion in limine stage. So at the motion in limine stage, this Court has the power to exclude evidence in limine only when the evidence is clearly indemnifiable on all potential grounds under loose versus United States. This means unless the evidence meets this high standard, the evidentiary ruling should be deferred until trial. So questions of foundation, relevancy, potential prejudice may be resolved in the proper context. The other fundamental rules guide... Are you suggesting, counsel, that a trial judge wants to have an orderly trial, avoid many trials of extraneous issues, cannot in a pretrial order exclude certain evidentiary items so as to be able to move the trial along with some reasonable speed? Although the trial court does have discretion to exclude evidence. In this instance, the trial court abused that discretion. I understand your argument that it's an abuse of discretion. I thought you said a minute ago that under loose, I think you said that the judge in order in limine can't do that. You've got to wait until the actual trial. Did I misunderstand you? All right. Well, if the evidence doesn't meet that, if it's not relevant on all potential grounds, so only when it's not relevant on all potential grounds can it be excluded in limine. How does the trial judge know what all the grounds are? I mean, there's apparently been a motion made for the trial. Counsel meet with the judge in chambers and make your arguments. Presumably you set forth what you intend to prove. The other side responds, and the trial judge makes a determination. What's wrong with that? Again, reserving the fact that you say there may not be an abuse of discretion, but doing it before the trial, why is that wrong? The issue with that is that you don't have the proper context. But you provide the context. Counsel, in this case, you represent the plaintiff. I'm sure you're an able advocate. I'm sure that you presented to the trial judge the reasons why you thought this evidence was crucial. Counsel for the government made a contrary argument indicating why it was prejudicial, why it was extraneous, et cetera, et cetera, et cetera. And that same argument would have been made in the court, only this time probably in the front of a jury or something, or having people at the jury quad are less convenient. The same arguments are being made either before or after. What's the difference? What I'm trying to say is that the 401 determination, whether or not it's relevant, is at issue here. So the trial court did not exclude the evidence because it wasn't relevant. The trial court excluded the evidence because of the 403 balancing test. I understand. But what I'm saying is that the trial judge can make the determination, rightly or wrongly, before trial in a motion in limine just like can do during the trial, can't she? That's true. Okay. But it's a higher standard if you're excluding it. Why is it a higher standard? Because Lou says it is. Because without the context of what happened in the trial. What is the standard? What is the higher standard? Is it not abuse of discretion? It's whether or not the evidence is clearly inadmissible on all potential grounds. Okay. So you're saying if the evidence is clearly inadmissible not on all grounds, then there's an abuse of discretion? Is that what you're saying? If it's excluded at the motion in limine. As opposed to during the trial. Correct. Correct. So moving on to the 401 evidence rule. Relevant evidence is any evidence that has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. So in determining whether or not the evidence has any tendency to make the existence of fact of consequence to any action more probable or less probable, the rule of thumb is to inquire whether or not the reasonable man might have believed that the probability of truth, of consequential fact, to be different if he knew the proper truth. It laid foundation. It might be helpful to make it concrete now. What is it saying improperly? What are you focusing? The most egregious, I think, abuse of discretion in this case was when the trial court prohibited the African-Americans from testifying, that they were also subject to disparate treatment. That they, in fact, were accused of violating rule. They were disciplined. Their white counterparts were not. Which witnesses? That was Virgie Ruiz and also McCree, James McCree. Also, in addition, it was Robert Darby. So what was happening is that the trial court said, you know, you can have one other person testifying that they believe that the workplace was inhospitable to African-Americans to corroborate plaintiff's testimony, but you can't provide the context that they formed that opinion. You can't provide the background, including the background of race relations at the call center at the IRS. And you can't do any of those things that would give that opinion. I just have to back up for one second. All three of the people you mentioned did, in fact, testify, correct? I know McCree did and I know Ruiz did, right? Correct. And Isabel Robinson was another. So I don't understand your argument that only one person was allowed to testify. About each fact. So one person was allowed to corroborate Ms. Browning's belief that she, that this workplace was treating blacks differently. And so the people that testified were not able to testify about those particular facts. Well, as I understood what the district, each one did testify, though, and they each testified about some of the things that they felt were inappropriate, unlawful in the workplace. And as I understood what the district court's concern was, the subject of the trial was this plaintiff and whether she personally had been treated improperly or not. And if three or four other people came in and talked entirely about their own situations, I think the court was concerned about a whole series of mini-trials. What, in your view, is the appropriate limit of her discretion to avoid that kind of attenuation? I believe the appropriate use of discretion in this instance would be to allow plaintiff to, as plaintiff was allowed in Obrey, to put forth evidence, anecdotal evidence, of individuals who were also treated poorly who were African American. What if there were 100 people? Would it be an abuse of the trial court's discretion to limit it to 10? Would you have to let all 100 people testify about their own individual experience? Well, there's strength in numbers, Your Honor. You're saying it would be an abuse of discretion. I'm not sure where the line is with that. A thousand, maybe? I'm not sure where the line is. But if you don't give the jury enough information to form the decision that this was, in fact, race-based, you end up with what happened in this trial, which was… The difference, though, if you were citing Obrey, that was a situation in which nobody was allowed to testify. And here, the people that you named off were allowed to testify. The question was cabining their testimony. And that seems to me significantly different in terms of an exercise of discretion.  Because they couldn't testify on the very issue that they needed to testify to prove the motivation of race discrimination. So, for example, they couldn't testify that they were treated more harshly when they were accused of breaking the rules. They couldn't testify about that. So the jury was left to wonder, you know, in this abstract sense of, well, why would this person believe that this atmosphere was racially discriminatory? Well, just let's take Darby. The way it played out, as I understand it, Darby testified that he did not feel he was treated. Correct. He wasn't allowed to go into the details. He didn't put on his case that. But her client was then allowed to testify as provided by Peter as to why about his being hung. He was put on the PIP. So he testified about his feelings. He was allowed to explain why he was, in her view, singled out. Is that not part of the evidence? That is part of the evidence. Can you appreciate that if each person, let's say we won't even have to go to the hypothetical 10 or 100 or whatever, for each person who comes in and makes a statement, the trial judge has to get a case to the jury, has to get it fairly presented, has to give the client a fair opportunity to make her case. But that doesn't mean putting on witness A, B, C, D, who is going to put on, in a sense, his or her own discrimination case, so that the employer then has to come back to each witness who's been allowed to put on and say, well, Mr. Darby was put on a PIP list because of ABC. And here's what Mr. Darby's personnel file shows, and down the list. And pretty soon a jury trial has expanded into a series of mini-trials, and that's precisely what Brown said. I do not want a series of mini-trials in the case. Now, how do you respond to that? First of all, I want to point out that Mr. Darby had other examples of treatment where he was treated differently than Caucasian employees, that he was not allowed to testify about. Secondly, I totally understand the trial court's constraints about time and getting the issues to the jury. However, in this case, we have this case that is based on indirect evidence, and the indirect evidence that it's based on is the differential treatment of African Americans in the workplace. And if you don't let the jury see that. Okay. I mentioned Darby. How many of the witnesses testified? They felt, without getting into all the details of why they felt it, how many were able to testify that Browning and Darby felt that they had unfairly treated them? Only Mr. Darby and Ms. Browning. Just those two people? Yes. And the others would have, did testify, were prepared to testify about discrimination? They were prepared to testify about their differential treatments between how they were treated in the workplace and the Caucasians were treated in the workplace. In addition, it's important to point out that every single peer of Ms. Browning was allowed to testify that they felt that everyone was treated fairly in the workplace. But we, on the plaintiff's side, who has the burden of proof, were limited to the one witness to corroborate Ms. Browning's perception. I'm sorry, how many witnesses? It was approximately five or six. Every one of them was allowed to testify that blacks were treated fairly. That everyone's treated equally in the workplace. So I'm going to reserve the rest of my time for rebuttal. Certainly. We'll hear from the government. May it please the Court, Kelly Zuse has been appearing on behalf of the United States. I'd like to begin with first correcting, I think, a misperception on the facts here. The four witnesses that were identified who were the African-Americans. First up, Virgie Ruiz, we raised no objection to. From the time of the first pretrial conference to the second pretrial conference, we withdrew any and all objection and we let the plaintiff know that if she wasn't going to call her, that we were going to call her as a witness. Now, Mrs. Ruiz, on my cross-examination, was asked, were you held to the same standards as Caucasian employees? And her answer was yes. So there was no limitation placed upon Mrs. Ruiz and her testimony about what took place in the workplace. What happened was the testimony at trial did not come out as it was anticipated in the witness statement. As for Mr. Darby, he was also allowed to testify about his views, at length, about what it was like to be an African-American at the call center. The one issue of disparate treatment that Mr. Darby raised was he was placed on a performance improvement plan, while someone else was not. Now, however, I think the reason for limiting his testimony on that was that Mr. Darby worked for Ms. Browning. He was a subordinate. Mr. Darby and the white comparator, that was Bill Milnarski, Mr. Milnarski was also a visually impaired individual. Mr. Darby had no means of knowing whether or not Mr. Milnarski was getting his job done or not. Mrs. Browning, though, was, and that's why Judge Brown, I think, properly said, look, if you want to get into this comparison, do it through the supervisor. Don't do it through these two subordinates. And she allowed that testimony. Now, the other person, and that was Mr. McCree. Mr. McCree never claimed that he was the victim of race discrimination. And, again, on my cross-examination of Mr. McCree, I asked him, so were you treated fairly by the IRS? And he said yes. Now, Mr. McCree filed one EEO complaint, and that was related to the fact that Mr. McCree is also visually impaired. And he was complaining that the IRS wasn't giving them braille updates quickly enough, a completely different situation than what we had with Mrs. Browning. I think the other thing that I want to be clear on is the suggestion that the defendants were allowed to call all of these witnesses while Mrs. Browning was limited. The six team leaders, I only had two on my list. I didn't want to call all those individuals. In fact, I objected to Mrs. Browning's plan to call all of those team leaders because I thought it was going to be cumulative, and Judge Brown overruled my objection. So I'm somewhat confounded to be faced here with the suggestion that somehow it was unfair for me to have called all of the other team leaders who worked for Mr. Ayotte because I didn't do it. So, factually, I think we've got some corrections of the record to be made. Who did call them? Mrs. Browning did because I only had two on my list to proffer as a comparison, and the other three or four were called by Mrs. Browning. And I think once we get past the facts, I think this court is aided in large extent on these evidentiary issues by the Supreme Court's recent decision in Sprint v. Mendelson. As I was reading through that case, I kept thinking back to the work that I do on criminal appeals. It reminded me a lot of Gall and Rita and Kimbrough with this theme of you should defer to the trial court, and I think that's exactly what you need to do here. Judge Brown made some tough calls. There's another learned judge who described the process of saying yes or no to evidence as calling balls and strikes, and that's precisely what Judge Brown did here. You could quibble with it. You may say, you know, we would have let this in or that in, would have made it a two-week trial or a three-week trial, but I think Judge Brown had a good read on this jury, and if this jury had to sit through two more weeks of listening to internal revenue manual policies and procedures, I think we would have killed them. So I think she properly exercised her discretion under Rule 403. She did it expressly. She cited the rules. She explained the basis for her rulings several times. There was simply no abuse of discretion there. We have briefed pretty thoroughly the issue of the permissive inference jury instructions. Unless the court has any questions. The only question I have is Browning's counsel indicates that there's a different standard under Luce in terms of the rulings by the court before trial as opposed to at the time of trial. Do you agree with that? No, I don't, Your Honor. Particularly here where there was no objection raised to Judge Brown that somehow it was premature to be ruling. And the complaint about context was also covered by the fact that both parties filed extensive trial memoranda, you know, 30 pages on what this case was about. So Judge Brown did have context. And the other thing that Judge Brown did is she said, and you can find this at SCR 43, and I quote, I am happy to reconsider any of these issues in the light of the actual record as it may exist, but always outside the presence of the jury. So I don't think she could have been any more explicit in her invitation to the parties to re-raise any of these issues should, in the light of the evidence that came out, it change the calculus. On the jury instruction issue, does the panel have any questions? I don't believe so. Thank you. Then I will submit. Thank you. We have some rebuttal time remaining. First of all, I wanted to bring up Mr. McCree's EEO complaint. Ms. Zussman claims that it's a completely different issue. It's a disability discrimination issue. We have a retaliation claim in this case. The fact that Mr. McCree was also, there was a termination proposed because of a rule violation for him, and he had filed a complaint in the past, is completely relevant to Ms. Browning's retaliation claim. Judge Brown did not allow us to put on evidence, even though that door was opened. And she said that at this late stage of the game, we're not going to go there. I have two questions. Following up on what was stated earlier, she indicated that you had not raised objection in the alumni conference to Judge Brown's initial specific rulings. Is that correct? I did raise objection to her specific rulings. She also indicated that Judge Brown, I guess she said SCR 43, said that he was willing to reconsider any of her rulings during the trial if warranted. Did you re-raise any of the issues that you objected to during the trial? My recollection is that particular statement only referred to the black reparations. Okay, well, let's take it on that. Did you re-raise the issue during trial? I did not because there was, in the context of that particular issue, I didn't feel that there was any more evidence that I had to offer once the case came in. So you got everything you wanted in on that. Yeah. And the other thing – Can I just clarify on the – I think I may have misunderstood. I thought the statement was to not object to Judge Brown considering the motion of limiting. That is the view. I didn't say that for all premature. I did not make that objection. That's fine. And I just wanted to clarify that I didn't get everything that I wanted in, but I got everything in that I thought Judge Brown would allow in on those issues, which was nothing. Even though I called the coworkers to testify about their disparate treatment, how they weren't disciplined, even though they weren't getting all the reports in on time and whatnot, Ms. Zussman is the one who elicited the testimony. Do you think everyone here is treated fairly testimony? That was not part of my questioning. I just wanted to clarify that for the court. But you called them on your direct. Correct, I did. Her cross elicited those statements? Correct. And did you object? The statements moved to strike? I did not at the time. And did you at that point approach the bench and say, now that they've opened the door, I should be able to get these other witnesses? I did try to do that, especially with Mr. McCree's testimony. And that was not permitted. I did want to talk a little bit about the jury instruction that we had asked for. Excuse me, counsel, this is rebuttal, and opposing counsel didn't argue the point. I just wanted to know if we had questions, and we didn't. So that's beyond the scope of rebuttal argument. Well, in light of that, I ask that this court review the evidentiary issues with the eye towards, you know, pretext and motive in employment cases are extremely difficult to prove. We have Judge Posner of the Seventh Circuit talking about how, of course, defendants of even minimal sophistication will neither admit discriminatory animus nor leave a paper trail demonstrating it. You know, plaintiffs need all of the tools in their arsenal to be able to show that this was, in fact, motivated based on race. And the jury in this case, you know, disbelieved the IRS's motivations, that my client was performing worse than her counterparts, but yet couldn't put it on race. And that, in large part, I believe, is because we were not permitted to put on the evidence to show that not only my client was held to a different standard, but that the other African-Americans were also being held to a different standard, whether or not they thought so, whether or not they personally wanted to sit up there and say to their employer that they felt that they were being treated disparately. Thank you, counsel. We appreciate the arguments of both counsel. The case just argued and submitted, and that's the end of our docket for this morning. Thank you.
judges: Graber, Fisher, Smith